Mike FISCHER, Plaintiff and Cross
Defendant, Appellant,

v.

Pauline FISCHER, Defendant and Cross
Complainant, Respondent.

No. 8183.

Supreme Court of North Dakota.

Jan. 7, 1966.

On Rehearing Feb. 14, 1966.

846

Duffy & Haugland, Devils Lake, for appellant.

John J. Tebelius, Harvey, for respondent.

ERICKSTAD, Judge (on reassignment).

This is an appeal by the plaintiff, Mike Fischer, from a judgment of the District Court of Wells County granting a divorce to the defendant and counterclaimant, Pauline Fischer, and awarding her certain real and personal property.

Mr. Fischer brought an action for separation from his wife, who answered by denying the material allegations of his complaint. She counterclaimed, seeking a divorce and "a just and equitable division of all the real and personal property" belonging to the parties.

In her counterclaim she asked:

\* \* \* that in making such division the Court assign and set over to the complainant, as her sole and separate property and estate, the following real and personal property:

420 acres of land described as follows:

The South Half of the Northeast Quarter (S½NE¼), the Southeast Quarter of the Northwest Quarter (SE¼NW¼), the North Half of the Southeast Quarter (N½SE¼) and the Southeast Quarter of the Southeast Quarter

(SE¼SE¼), in Section Thirty-three (33), in Township One Hundred Forty-eight (148), North of Range Seventy-two (72), Wells County, North Dakota,

The West Half of the Southwest Quarter (W½SW¼), the Southwest Quarter of the Northwest Quarter (SW¼ NW¼), the Northeast Quarter of the Northwest Quarter (NE¼NW¼) and the West Half of the Northwest Quarter of the Northeast Quarter (W½ NW¼NE¼), in Section Thirty-four (34), in Township One Hundred Forty-eight (148), North of Range Seventy-two (72), Wells County, North Dakota.

Said land being one-half of all land accumulated by the joint efforts of plaintiff and defendant.

(The court set over to Mrs. Fischer all of the real property requested by her except for the West Half of the Northwest Quarter of the Northeast Quarter in Section Thirty-four, Township One Hundred Forty-eight, North of Range 72.)

She also enumerated in her counter-claim all of the personal property owned by the parties and asked for one-half of it. (The court awarded her one-half the value of the personal property.)

On April 22, 1963, the day set for a hearing on an order to show cause, Mr. Joseph J. Funke appeared as attorney for Mr. Fischer and made this statement in open court:

At this time your Honor, the plaintiff and defendant in the cross-complaint has instituted no responsive pleadings to the counter-claim and we, Mike Fischer, are willing that Mrs. Fischer go ahead with her request for divorce and it may be heard as a default. The only concern is the financial problems that we wish to submit to the Court.

Following submission of testimony on the part of both Mr. and Mrs. Fischer, the trial court rendered its decision, which is set forth in its memorandum opinion, the relevant part of which reads as follows:

In this case there was no question as to the Defendant's right to have an absolute decree of divorce and that was previously announced by the Court.

The parties also agree that a division as nearly equal as possible should be made of the real and personal property. The land seems to be the main source of difficulty, and since the parties cannot agree, the following division will be made.

The Plaintiff shall have the following:

Township 148 Range 72

Section 34: NW¼NE¼
E½NE¼

Township 146 Range 72

Section 4: SE¼

Section 3: SW¼

Then the Defendant shall have the following:

Township 148 Range 72

Section 33: SE¼NW¼
S½NE¼
N½SE¼
SE¼SE¼

Section 34: W½SW¼
SW¼NW¼
NE¼NW¼

By making this division the Plaintiff will be receiving twenty acres more than he would have had if there had been an equal division. In view of the fact that the land given the Defendant appears to be of greater value, I feel that this twenty acres will offset the better quality land received by the Defendant.

It will be noted that the Court set over to Mrs. Fischer the real property which

she requested in her counterclaim less 20 acres, or a total of 400 acres of land, and that it set over to Mr. Fischer 440 acres of land, being the remainder.

The court divided the personal property equally, and Mr. Fischer makes no complaint in connection with that division as contained in the amended judgment of February 11, 1964.

Although Mr. Fischer asked for a trial de novo, he has stated in his brief that the only issues are: (1) the division of the farm land; and (2) the award to the wife of attorney's fees.

(The court awarded Mrs. Fischer $1,500 in attorney's fees.)

For this reason we shall consider only these two issues on appeal.

Mr. Fischer argues:

The main issue in this case is simple. Did the Trial Court divide the farm land on a fifty-fifty basis, as the parties had agreed? We submit the evidence is clear that such a division was not made and that the division decreed is wholly impractical.

In reviewing the pleadings, the exhibits, and the transcript of the proceedings, we find no such agreement. As pointed out earlier, Mrs. Fischer in her counterclaim asked that the court make "a just and equitable division of all of the real and personal property" owned by the plaintiff and the defendant and that, in making such division, the court assign and set over to the defendant and counterclaimant as her sole and separate property the real property which was described therein. This the court did, with the exception of the 20 acres set over to Mr. Fischer.

The reference thereafter to the fact that the described land was one-half of all of the land accumulated by the joint efforts of the plaintiff and the defendant did not constitute an agreement on her part to accept other land or land which was worth only one-half of the value of all of the land as her part of the division of the property.

Mr. Fischer refers to the following examination of Mrs. Fischer in support of his argument that an agreement existed between the parties that the real estate should be divided equally:

Q. Now you're asking the Court in addition to the divorce for a division of all the property that you and your husband owned?

A. Yes.

Q. What division do you want the Court to make, Mrs. Fischer?

A. What do you mean, I mean I don't understand that?

Q. On what basis do you want the Court to divide what share do you want?

A. *Well, whatever I put down there.*

Q. Well you tell the Court what you want, please, will you?

A. I can't right offhand, I don't remember it offhand.

Q. What share do you want?

A. The half.

[Emphasis supplied.]

■ Our analysis of this testimony is that Mrs. Fischer was referring to "the half," as she described it in her counterclaim. The court was not prevented by this statement from making a division of the real estate which was fair and equitable under all the facts and circumstances of the case, although the division may not have been exactly equal.

In his brief Mr. Fischer acknowledged that the trial court had this authority:

In effect, the respondent apparently concedes that the land division was not on a fifty-fifty basis but argues "The

division of property between husband and wife in a divorce action rests with the judicial discretion of the trial court." * * *

We readily concede that in the absence of any agreement between the parties the foregoing is a correct statement of the law but in this case it is obvious that there was an agreement between the parties for a fifty-fifty division. * * *

■ As we have said, we find no agreement to divide the property equally. Furthermore, we question whether an agreement to do so would prevent the trial court from dividing the property on another basis, providing the division were just and equitable under the facts and circumstances of the case.

In a 1950 decision, this court said:

The power of the court to decree a property settlement was derived from the foregoing statute [§ 14–0524, N.D. R.C. of 1943, now § 14–05–24, N.D. C.C.] and not from the agreement of the parties. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697. "The stipulation was an agreement which was to be submitted to the court for his advice and guidance in exercising the powers vested in him under the statute. The decree lost none of its effectiveness because the court accepted in toto the provisions of the stipulation instead of modifying them as he unquestionably had a right to do." Karteus v. Karteus, 67 N.D. 297, 301, 272 N.W. 185, 187. It follows that a decree settling the property rights of the parties to a divorce action and granting alimony is an adjudication of what constitutes a just and proper distribution of the property of the parties, whether the decree be made pursuant to a stipulation or upon a consideration of, and findings made, upon other evidence in the case. [Cases cited.] Harchenko v. Harchenko, 77 N.D. 289, 43 N.W.2d 200, at 201.

■ The power to divide property between husband and wife in a divorce action is vested in the trial court, and a division by it will not be overturned unless it is shown that the division is unfair and inequitable under the facts and circumstances of the particular case.

Section 14–05–24, N.D.C.C., provides:

When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper * * *.

and Section 14–05–25, N.D.C.C., states:

* * * The court, in rendering the decree of divorce, may assign the homestead or such part thereof as to the court may seem just, to the innocent party * * *.

In this case, Mrs. Fischer is the innocent party. At the time of the trial the Fischers had been married and living as husband and wife for more than 30 years. Except for approximately five years shortly following their marriage, which they spent in California, they engaged in farming in Wells County. They resided on a 320-acre farm, purchased by them about 23 years ago from Mr. Fischer's father. Title to this land was acquired when Mr. Fischer and his wife assumed his father's mortgage. There were no children.

Soon after the purchase of the farm on which they resided they purchased a second tract of 320 acres, known as the "Chaseley farm," and several years later they bought a 200-acre tract known as the "Schmidt land." In all, they acquired through their joint efforts during their marriage and owned at the time of the trial a total of 840 acres of land, in addition to personal property and money valued at approximately $66,000.

The evidence establishes that Mrs. Fischer labored and rendered personal services to her husband far beyond those normally expected of a wife. These serv-

ices were performed at times and under conditions made extremely .difficult by the conduct of Mr. Fischer, who drank alcoholic beverages excessively for the first 17 years of their marriage.

It was during the 17 years when Mr. Fischer drank excessively that all of the land was purchased and paid for except the tract of 200 acres known as the Schmidt land.

Despite Mrs. Fischer's patience and the hard work which she performed, Mr. Fischer physically abused her and spoke of her in vile and offensive language.

The record further discloses that for seven years prior to the trial Mr. Fischer had been interested in and had openly associated with a woman other than his wife.

Under these facts and circumstances the court awarded Mrs. Fischer the homestead and 240 additional adjoining acres, amounting to a total of 400 acres of land, and awarded Mr. Fischer a total of 440 acres of land, 120 acres of which is 9 miles distant from the other land. Mr. Fischer contends that the land awarded him is $5,200 less valuable. This is denied by Mrs. Fischer, who points out that Mr. Fischer, when negotiating to buy the land, considered it all of equal value. There are farm buildings on the Chaseley farm, which was awarded to Mr. Fischer.

■ Our court has on a number of occasions approved divisions of property on an other than equal basis.

In Van Vleet v. Van Vleet, 42 N.D. 470, 174 N.W. 213, the wife was granted a divorce on the grounds of extreme cruelty of the husband. The trial court provided in its judgment that her portion of the property should be paid her in the form of an annuity payable in a specific amount each month and the husband should have the possession and custody of all the property. The annuity was declared to be a lien against the land awarded to the husband.

Upon appeal by the wife the provision with reference to the property settlement was modified. The court held that where a divorce is occasioned by the extreme cruelty of the husband toward the wife, the wife has "a right not merely to sufficient allowance for her support, so far as it is possible for the defendant to provide it, but a right to the enjoyment of a portion of the property which she has helped to accumulate."

The court directed the trial court to order a division of the property in such manner as would assign to the wife an amount of property equivalent in value to *at least one-half* of the net worth of the property accumulated.

■ In McLean v. McLean, 69 N.D. 665, 290 N.W. 913, the court reaffirmed the power of the trial court to make a fair and equitable distribution of the property of either or both parties in a divorce action. It stated that in arriving at a fair and equitable division of the property there is no rigid rule to be followed, but that the division must be based on the peculiar facts and circumstances of each case.

In Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697, a divorce was granted to the wife on the grounds of extreme cruelty and habitual intemperance of the husband. The court divided the property by assigning the homestead to the wife and dividing the remaining property approximately equally between the parties. The husband appealed on the grounds that the division was inequitable. The judgment of the trial court granting a divorce to the wife and dividing the property in the manner stated was affirmed on appeal. The court said:

Inasmuch as RC 1943, § 14–0524 [now § 14–05–24, N.D.C.C.] and cognate statutes contain no statutory enumeration of the "circumstances" to be considered in making an "equitable distribution", it logically follows that the division of property or adjustment of property rights upon a divorce gen-

erally depends on the facts and circumstances of the particular case.

* * * Among the "circumstances" of the case at bar which are logically relevant and material to the issue of "equitable distribution", under the statute * * * are those concerning the condition, needs and conduct of the parties, and, in particular, their respective earning powers as determined by the age, ability, experience and health of each spouse; and the amount of property owned by them, its nature, and the time and manner of its acquisition; in other words, the source from which it was derived, and how and when it was acquired, and whether the property is owned separately or jointly, and the equities of each spouse therein.

*　　*　　*　　*　　*　　*

We deem it unnecessary to comment beyond stating, by way of conclusion, that where, in the circumstances of this case, the wife was granted a divorce without alimony, and there are no children, and the homestead was assigned to her alone, and the trial court decreed that the remaining property (including money), whether separately or jointly owned, should be divided equally, and such division was approximately equal, such decree will not be modified. Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697, at 703.

In Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, the wife obtained a divorce upon her cross-complaint on the grounds of extreme cruelty. The parties had been married 12 years; the property each contributed to the marriage was about of equal value. During their marriage they purchased and paid for a 640-acre farm, which had a fair value of $19,200 at the time of the trial. They had personal property of the value of $17,500. The court awarded the farm to the wife and all of the personal property to the husband. Upon appeal by the husband on the grounds that the division was

unfair and inequitable, the trial court's judgment was sustained. The Supreme Court said:

* * * The distribution to be made depends upon the facts and circumstances of each particular case. * * * There is no rigid rule for the division of property but the ultimate object to be sought is an equitable distribution. * * * Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107, at 111.

■ The court quoted with approval the rule of the Nebraska Supreme Court giving factors to be considered in arriving at an equitable distribution, as follows:

In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and from all such elements the court should determine the rights of the parties and all other matters pertaining to the case. [Holmes v. Holmes, 152 Neb. 556, 41 N.W.2d 919.] Ruff v. Ruff, supra, 52 N.W.2d at 111.

In approving this rule, our court said:

We think this is a proper rule to apply, where, as in this case, the wife has been granted a divorce for the fault of the husband. Under it, it is clear to us that the division of property made by the trial court is not unfair to the plaintiff. He is not required to pay alimony. The marriage relation is completely dissolved.

* * * The evidence indicates that he is an able farmer. He is in a position to continue his means of livelihood. * * * Ruff v. Ruff, supra, at 111–112.

The foregoing rule was followed in making a division of property in Fleck v. Fleck, 79 N.D. 561, 58 N.W.2d 765. It is to be noted that in the Fleck case the marriage lasted only five years, and the husband had considerable property of his own at the time of the marriage.

In Dahl v. Dahl, 97 N.W.2d 844 (N.D. 1959), the wife brought the action for divorce on the grounds of extreme cruelty. The parties were married in 1928. Proceedings for divorce were commenced in 1958. At the trial the wife was permitted to prove her grounds for divorce as by default. On the issue of property accumulated during the marriage and an equitable division of it, both parties offered testimony.

The court awarded to the wife the homestead and other real and personal property, all of which had been jointly acquired and accumulated during the marriage, of the net value of $21,300, and to the husband real and personal property jointly acquired during the marriage of a net value of $23,588. The court was of the opinion that a gift of $4,000 from the wife's father, which was in the form of forgiveness of a debt due him from the husband and wife, was the sole property of the wife.

The husband was displeased with the division of the property and contended that the division was inequitable upon the following grounds:

That the cancellation of the $4,000 debt and mortgage by plaintiff's father was gift to both of the parties and should be considered as joint property rather than the individual property of the plaintiff; that defendant is a farmer with a line of farm machinery sufficient to farm a section of land and that he intends to continue farm-

ing; that the half-section of land he is awarded is without buildings of any kind, leaving him without shelter for his machinery and with no place to store his grain; that the plaintiff cannot and will not farm and necessarily will rent out the farm land awarded her, and the buildings would only be a liability. Dahl v. Dahl, 97 N.W.2d 844 at 847 (N.D.1959).

On appeal the judgment of the trial court was modified so as to award the $4,000 gift to both parties. In all other respects the division of the property was affirmed. The court cited our statutes vesting in the trial court the power to divide the property and award the homestead to the innocent party (§§ 14–0524 and 14–0525, N.D.R.C. of 1943, now §§ 14–05–24 and 14–05–25, N.D.C.C.); reaffirmed the principle stated in Agrest, that "the division of property or adjustment of property rights upon a divorce generally depends on the facts and circumstances of the particular case"; and quoted with approval the rules set out in Ruff.

It said:

With the exception of the finding of the trial court that the plaintiff should have credited to her as her separate and individual property the sum of $4,000, represented by the cancellation of the unpaid portion of the real-estate mortgage, we agree that an equitable distribution of the property was made. * * * Dahl v. Dahl, supra, at 848.

In the recent case of Nicholson v. Nicholson, 126 N.W.2d 904 (N.D.1964), a divorce was granted to the husband on the grounds of extreme cruelty. The wife appealed from the judgment providing for division of the property and custody of the children. Except for a modification of the amount to be paid the wife, the judgment was affirmed.

The decision of the Court was based on our statutes and on the principles stated in Dahl, Agrest, and Ruff, to guide an equit-

able division of property in divorce cases, saying:

> In divorce actions the distribution of property between the parties depends on the facts and circumstances of each individual case. [Cases cited.]
>
> \*   \*   \*   \*   \*   \*
>
> There is no rigid rule for the division of property but the ultimate object is an equitable distribution. [Cases cited.] Nicholson v. Nicholson, 126 N.W.2d 904 at 907–908 (N.D.1964).

■ We therefore conclude that it was not error for the district court to divide land acquired and accumulated through the joint efforts of a husband and wife during approximately 30 years of married life, so that the wife, to whom a divorce was granted on the grounds of extreme cruelty, was awarded a unit of 400 acres of land, including the homestead, and the husband was awarded other farm buildings and 440 acres of land (even though it was contended to be of less value and part of it was separated from the rest by a distance of 9 miles), the division being equitable under all of the facts and circumstances of this case.

We now turn our attention to Mr. Fischer's contention that the trial court erred in awarding his wife $1,500 in attorney's fees.

He argues that the sole authority for granting attorney's fees or suit money is found in § 14–05–23, N.D.C.C., and cites the case of State ex rel. Hagert v. Templeton, 18 N.D. 525, 123 N.W. 283, a decision rendered in our state in 1909, in support thereof.

His view is that § 14–05–23, N.D.C.C., limits an award for attorney's fees to "any money necessary \* \* \* to prosecute or defend the action." He quotes from the syllabus of a 1912 decision as follows:

> The object of section 4071 [now § 14–05–23, N.D.C.C.] is to enable the wife to properly present her cause of action or defense to the court; and if she has ample means of her own to enable her to do this it would be an abuse of discretion to require the husband to make such allowance. Bailey v. Bailey, 22 N.D. 553, 134 N.W. 747.

He contends that this rule was approved by our court in Heller v. Heller, 81 N.W.2d 124 (N.D.1957), and that this is in accord with the general rule of law.

His conclusion is that, inasmuch as Mrs. Fischer has received cash, bonds, and land through the judgment, she has assets more than adequate to pay her own attorney's fees.

■ However, our view of this matter is that § 14–05–23, N.D.C.C., relates to the ability of the person to prosecute or defend the action at the time of the commencement of the action and that it is not what division of property the court may ultimately make that determines whether a person is entitled to an award of money to prosecute or defend the action.

The section reads as follows:

> 14–05–23. Temporary alimony—Suit money.—When an action for divorce is pending, the court in its discretion may require either party to pay as alimony any money necessary for the support of the other party, or of children of the marriage, or to prosecute or defend the action. North Dakota Century Code.

One member of our court has expressed the view that attorney's fees should not be awarded in a case in which the complainant failed to make application for fees prior to the termination of the case on its merits. This objection cannot apply in the instant case, as application for attorney's fees was made, not only in Mrs. Fischer's counterclaim, dated April 4, 1963, which was heard on April 22, 1963, and decided on June 7, 1963, but prior to the hearing thereon (as indicated by the order to show cause and temporary restraining order dated April 5, 1963, wherein the district court ordered that Mr. Fischer show cause before the

court at a hearing scheduled for April 22, 1963, or as soon thereafter as counsel could be heard, why a temporary injunction should not issue commanding him, among other things, to pay a reasonable sum to Mrs. Fischer to apply on her attorney's fees and costs).

■ The necessity for the suit money must be ascertained as of the time of the commencement of the action and not as of the time of the appeal from the judgment obtained. Otherwise, a person with only potential assets might be denied representation at the most crucial stage of the lawsuit.

■ As suit money is in the discretion of the trial court, that court's decision in regard thereto will not be interfered with unless it is shown that the trial court has, abused its discretion.

■ As Mr. Fischer has failed to prove that Mrs. Fischer had sufficient funds to prosecute the suit and support herself at the time of the commencement of the suit, he has failed to prove that suit money was not necessary, and thus has failed to show wherein the trial court abused its discretion.

■ An abuse of discretion is never assumed but must be affirmatively established.

In Bryant v. Bryant, 102 N.W.2d 800 (N.D.1960), the trial court awarded to the respondent wife $550 in attorney's fees for preparation of a brief and presentation of her case in the Supreme Court. The amount was challenged on appeal on the ground that it was excessive.

In affirming the award, the court said:

A reviewing court is very reluctant to disturb the award of a lower court or to interfere in any way with the sound exercise of discretion by such court in determining the proper amount of alimony for support or for expenses to be paid by one of the parties to such divorce suit. Any successful attack upon

such order must be based upon an abuse of discretion, which abuse is never assumed but must be affirmatively established. Whitehead v. Whitehead, 45 Cal.App.2d 447, 114 P.2d 403. Bryant v. Bryant, 102 N.W.2d 800, at 810 (N.D.1960).

It should be noted that in Bryant the trial court had ordered that the appellant pay the respondent $200 monthly as alimony and $300 monthly for the care of three minor children.

In Kressly v. Kressly, 77 S.D. 143, 87 N.W.2d 601, the wife obtained a divorce on the grounds of extreme cruelty. The parties were married in 1945, when the wife was 21 years old and the husband was 41 years old. No children were born of the marriage. The husband had accumulated considerable property before the marriage, which, the court found, had increased very little from the time of the marriage until the wife left him in 1954. At the time of the trial the net assets of all property accumulated before and after marriage had a value of approximately $193,000.

The trial court awarded $5,500 to the wife as attorney's fees. The defendant challenged the award on appeal, contending that the amount allowed was excessive in comparison with allowances previously approved by the court. Although the Supreme Court of South Dakota reduced the cash allowance to the wife from $64,500 to $25,000, it affirmed the allowance of $5,400 for attorney's fees, saying:

* * * The allowance of attorneys' fees rests in the discretion of the trial court * * * and will not be interfered with by this court unless it appears there is error in the exercise thereof. The defendant in his brief points to no particular error of the trial court, claiming only that by comparison the allowance is too large. Each case must rest on its own facts and usually a comparison of fees is of little value in determining whether the trial court erred in determining the amount

thereof. The amount allowed as attorneys' fees and costs appears to be quite liberal. However, from the record we are unable to say that the trial court erred in the exercise of its discretion. Kressly v. Kressly, 77 S.D. 143, 87 N.W. 2d 601, at 605–606.

We conclude that it was not error for the trial court to award Mrs. Fischer $1,500 for attorney's fees.

The judgment of the trial court is therefore in all things affirmed.

STRUTZ, J., concurs.

TEIGEN, J., concurs specially.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, J., did not hear the argument in this case but participated on the briefs.

TEIGEN, Judge (concurring specially).

I concur in the result but feel that the amount of attorney's fees stated in the judgment, after a division of the property was effected, should be reduced by one-half of the amount of attorney's fees allowed. The reason is simple. The law contemplates that where temporary alimony is awarded to prosecute the action, Section 14–05–23, N.D.C.C., quoted in the majority opinion, it should be paid before a division is made of the property. This reduces the amount of the assets for division by an amount equal to the amount allowed as temporary alimony necessary to prosecute the action.

In this case the trial court attempted to divide the property as nearly as possible on a fifty-fifty basis. However, this it did not accomplish because the husband is required to pay the temporary alimony awarded the wife to prosecute the action from the assets which he has left after the division is made. This makes for a differential of $3,000 in this case. It is, therefore, my opinion that the amount set forth in the judgment for this purpose should be reduced to the sum of $750.

ERICKSTAD, Judge.

On Rehearing.

The first point is a reargument of the appellant's contention that the parties agreed that the property should be divided equally and that the court tried to divide the property equally but failed.

Special emphasis was made of the trial court's statement in the memorandum opinion that "the parties also agree that a division as nearly equal as possible should be made of the real and personal property." However, the respondent points out that the next sentence of the memorandum opinion indicates that there was no agreement to divide the land equally. The sentence reads as follows: "The land seems to be the main source of difficulty, and since the parties cannot agree, the following division will be made."

It is true that after the part of the memorandum opinion setting out the division of the land the court said: "By making this division the plaintiff will be receiving twenty acres more than he would have had if there had been an equal division. In view of the fact that the land given the defendant appears to be of greater value, I feel that this twenty acres will offset the better quality land received by the defendant."

In light of the court's language in the amended findings of fact ("that in order to accomplish a fair and equitable division and distribution between the parties of all the real and personal property herein mentioned and referred to"), which we deem controlling over any language used in the memorandum opinion, we conclude that the trial court's intent was to do what was fair

and equitable under the circumstances. That is all that the court was required to do. It is clear from the many paragraphs of the findings of fact that the court considered many factors, including the bad conduct of the appellant and the innocence of the respondent, in arriving at the division of the property.

With respect to this point, therefore, we adhere to the view expressed in our opinion.

The second point is newly raised. It is that Mrs. Fischer had $1,300 in government bonds at the time she applied for attorney's fees and "hence, an award at that time was not required, but had it been made then it would have reduced the amount for ultimate division."

■ Our view is that one need not be completely destitute to be eligible for allowance of attorney's fees in the prosecution or defense of an action for divorce. Divorce proceedings usually consume months, and in some cases years before they are concluded. During the period of time between the initiation of the action or application for the allowance of attorney's fees and the culmination of the action or the making of the award, a party to a divorce must provide for his or her necessities and should not be required to seek charity or governmental aid for these purposes if ample assets have been accumulated through the efforts of the parties.

■ In this case Mrs. Fischer had available $1,300 in bonds which she had purchased from the proceeds of the sale of milk, cream, and eggs. Together the parties had accumulated property approximating $100,000 in value, a great part of which was held in Mr. Fischer's name or was under his control. Under these circumstances we do not believe the trial court abused its discretion in allowing Mrs. Fischer $1,500 in attorney's fees. Any previous decisions of this court which might be interpreted to the contrary are hereby overruled.

We therefore adhere to our original opinion in all respects.

STRUTZ and KNUDSON, JJ., concur.

BURKE, C. J., did not participate.

TEIGEN, Judge.

I dissent.

We granted a rehearing in this case and have now heard the rearguments of counsel. The majority of this court has adhered to the original opinion; however, I feel that the trial court did not accomplish that which it attempted to accomplish in the division of property between the parties and that the judgment should be modified.

This is an action for divorce commenced by the plaintiff. The defendant cross-claimed and prayed that a divorce be granted to her. In order that the case could be expeditiously tried, the plaintiff withdrew his complaint and permitted the defendant to prove up a case for divorce as on default, reserving however the right to submit evidence on the matter of division of the properties. This was done in open court. The defendant, in addition to cross-claiming for divorce, petitioned the court for an allowance of temporary alimony and suit money and the hearing on the petition was scheduled for the day on which the above stipulation was made. For this reason the court proceeded forthwith with the trial of the action on the basis of the stipulation.

The defendant introduced evidence in support of her cause for divorce as prayed for in the cross complaint. The plaintiff did not cross-examine nor did he introduce any evidence to refute the evidence introduced by the defendant. This was in accordance with the stipulation. Following the trial of the main action for divorce, both parties introduced evidence pertaining to

the property and the division to be made by the court.

The plaintiff has appealed from the judgment which we affirmed in the original opinion of this court. Two main issues were argued on the appeal and reargued on the rehearing. The plaintiff contends that it was the agreement and understanding of the parties that the property be divided equally and that the district court attempted to make an equal division of the property but that it failed and, secondly, that it was error for the district court to allow, as temporary alimony, attorney's fees to the defendant in the amount of $1,500, payable by the plaintiff out of the property remaining in his hands after the division of properties was made.

I think it is clear that both parties were desirous of having the property divided equally. I note that in the cross complaint of the defendant the property of the plaintiff is described in detail and in the prayer for relief, in eight separate paragraphs, she asks that the property described be divided one-half to each. Relative to real estate, however, she asks that the 420 acres which she describes be decreed to her. It appears from the evidence that the parties owned 840 acres of farm land. The defendant selected one-half of the land and asked that it be set over to her. During the trial the defendant testified:

Q. What share do you want?

A. The half.

The plaintiff testified:

A. I believe she should have a rightful half, yes.

And, on cross-examination, he testified:

Q. And didn't you dismiss it [a prior divorce action] because your wife demanded one-half of the property, isn't that one of the reasons?

A. No.

Q. At the time you were not willing to give her one-half of the property, were you?

A. Yes, I was.

The trial court in its memorandum opinion said:

The parties also agree that a division as nearly equal as possible should be made of the real and personal property.

It is apparent and clear to this writer that this is what the trial court attempted to do. The trial court, in making a division of the property, did not decree to the defendant all the land she prayed for in her cross complaint. Instead, it decreed to her 400 acres and not 420 acres. It decreed that the plaintiff retain 440 acres of land and stated:

By making this division, the plaintiff will be receiving 20 acres more than he would have had if there had been an equal division. In view of the fact that the land given the defendant appears to be of greater value, I feel that this 20 acres will offset the better quality land received by the defendant.

Thus the trial court attempted to divide the land on the basis of value and not on an acre basis.

A further indication that the trial court attempted to divide the property between these parties on a 50-50 basis is indicated by the fact that it ordered an amendment of the judgment redistributing some of the personal property so as to assure a 50-50 division of it.

The evidence establishes that the plaintiff was the owner of two separate farms located approximately nine miles apart. The defendant was decreed 360 acres in the home farm valued at $70 an acre, equalling $25,200, and 40 acres in the home farm valued at $50 per acre, equalling $2,000, for a total valuation of $27,200. The plaintiff was decreed 120 acres in the home farm, valued at $50 per acre, equalling $6,000, plus

320 acres of the other farm which is known as the Chaseley farm, valued at $50 per acre, equalling $16,000 for a total of $22,000. There is a difference of $5,200 or, in other words, the defendant received land valued at $2,600 more than one-half and the plaintiff received land valued at $2,600 less than one-half. The evidence establishing the acre valuation is not refuted.

The majority have construed the language used by the court in its amended findings of fact ("that in order to accomplish a fair and equitable division of the distribution between the parties of all the real and personal property herein mentioned and referred to") to be controlling over the language used in the memorandum opinion and construes this language to mean that it was the trial court's intent to do what was fair and equitable under the circumstances as opposed to an equal division, and that this was all that the trial court was required to do. They then allude to the many factors which the trial court considered, including the bad conduct of the plaintiff and the innocence of the defendant in arriving at the division of the property. This is mere conjecture and, under the circumstances of the trial of this action, merits little weight. Ordinarily in a divorce case in which one of the parties agrees that the other party may go ahead as on default, only such evidence as would be legally sufficient to establish a cause of action is introduced in evidence. However, a review of the record made in this case shows that the defendant was not governed by any such restraint. I feel that because the plaintiff made no attempt to refute or object to the introduction of this evidence by the defendant and introduced no evidence on his own behalf relative to the subject matter, it is unfair to give much, if any, weight to such evidence in determining a property division. The parties to this action have been married for 31 years and accumulated an estate valued at about $100,000 while engaged in the occupation of farming. It is evident to me, on the basis of the record, particularly in view of the ignorance displayed by the defendant as to their business affairs, that the plaintiff was not all bad but rather that he is principally responsible for the accumulation of this wealth.

The second argument pertains to the allowance of attorney's fees. The trial court allowed the defendant attorney's fees as temporary alimony or suit money in the amount of $1,500 to be paid by the plaintiff to the defendant from the property remaining in his hands after the court had made the property division. As stated in my special concurring opinion, written at the time of the release of the original majority opinion, this makes a differential of $3,000. It was my opinion that the judgment should have been modified reducing the sum to $750. However, the plaintiff on petition for rehearing has pointed out that the defendant had $1,300 in government bonds at the time she applied for the temporary alimony and suit money. It is clear that ordinarily attorney's fees in civil actions are left to the agreement, express or implied, of the respective parties. See Section 28–26–01, N.D.C.C. Attorney's fees are not recoverable in an action unless expressly authorized by statute. Such a statute is provided under our divorce laws. See Section 14–05–23, N.D.C.C. It provides:

> Temporary alimony—suit money.— When an action for divorce is pending, the court in its discretion may require either party to pay as alimony any money *necessary* for the support of the other party, or of children of the marriage, or to prosecute or defend the action. (Emphasis supplied.)

The above statute was intended to be exclusive and to embrace the entire subject matter of alimony, support or suit money pendente lite. State ex rel. Hagert v. Templeton, 18 N.D. 525, 123 N.W. 283, 25 L.R. A.,N.S., 234.

We said in Bailey v. Bailey, 22 N.D. 553, 134 N.W. 747, that if the wife has ample means of her own to present her cause of

action or defense to the court, it would be an abuse of discretion to require the husband to make an allowance. In Hodous v. Hodous, 76 N.D. 392, 36 N.W.2d 554, 12 A.L.R.2d 1051, we said that a debt incurred by a wife for medical expenses cannot be made the basis of a payment required to be made as temporary alimony where the debt was incurred several months prior to her application and its payment is not necessary for her support. In Heller v. Heller, N.D., 81 N.W.2d 124, we said the main consideration in making an allowance for support money is the need of one party and the ability of the other to pay. The authority of the court to allow temporary suit moneys rests on statute, otherwise it does not exist. Hodous v. Hodous, supra. It appears the majority would overrule these and other cases applying the rule of necessity when they state:

Any previous decisions of this court which might be interpreted to the contrary are hereby overruled.

The cases cited above merely apply the statute which is clear. We said in State ex rel. Hagert v. Templeton, supra, as follows:

Jurisdiction in matters relating to divorce and alimony is conferred by statute, and the power of courts to deal with such matters must find support in the statute, or it does not exist.

See also Leifert v. Wolfer, 74 N.D. 746, 24 N.W.2d 690, 169 A.L.R. 633; Agrest v. Agrest, 75 N.D. 318, 27 N.W.2d 697; Brandt v. Brandt, 76 N.D. 99, 33 N.W.2d 620; Stoutland v. Stoutland's Estate, N.D., 103 N.W.2d 286; Azar v. Azar, N.D., 112 N.W.2d 1; Slade v. Slade, N.D., 122 N.W. 2d 160.

Certainly after the court had made a division of the property granting this defendant more than $50,000 in property, she was well able to pay her own suit money and attorney's fees. Furthermore, at the time of application for temporary alimony, she had $1,300 in her name and under her control which she could have used for this purpose. In addition, she was living on the home farm which, according to her testimony, produces food for use or sale. It is my opinion that the defendant failed in her proof to establish necessity.

For the reasons aforesaid, I feel the court's judgment on division of the property should be modified.